EDMUND H. THURBER _vs._ CHARLES H. SPRAGUE _et als._, Executors.

SAME _vs._ SAME.

A father made, as trustee for his minor son, a deposit in a savings bank. The son after becoming of age demanded the deposit of his father, who replied: "I never want to hear of this matter again. I made the change of investment supposing it was for the best, but it was not. . . . If you are not satisfied and want the $500, take it and go; but if you remain here, I do not want to hear of it again." The son after this remained at home and was supported by his father.

In an action for the $500 brought by the son against the father's executors,

_Held_, that the above facts showed a complete accord and satisfaction as to the $500.

A father transferred into his own name, as trustee for his minor son, certain stock, and subsequently drew and used the dividends. The son remained a member of his father's family, was supported by the father both before and after majority, and knew nothing of the transfer of the stock until the father's death.

In an action for the amount of the dividends brought by the son against the father's executor,

_Held_, that he could recover.

_Held_, further, that the executors were not entitled to set off the amounts spent by the father on the son after the stock was transferred.

_Held_, further, that the son could recover interest on the dividends only from the date of his writ.

When a child after majority remains as before it with his father, supported by the father, and a member of the father's family, the child has no right of action against the parent for services, nor the parent against the child for support.

ASSUMPSIT. Heard by the court, jury trial being waived.

_February_ 13, 1892. TILLINGHAST, J. These cases are each _assumpsit_, the first to recover the sum of five hundred dollars, the same being the balance of a deposit made by Gorham Thurber, the defendant's testator, in his lifetime, in the Providence Institution for Savings, in his name as trustee for the plaintiff his son, together with interest thereon ; and the second, to recover the dividends upon certain stock of the Navassa Phosphate Company.

These cases were heard together by the court, jury trial being waived. We will consider them in their order.

In the first case, the defendants plead an accord and satisfaction in defence of the action. It is admitted that the defendant's testator was trustee for the plaintiff, and as such, on February 6, 1879, withdrew from said institution for savings the sum of $500, which he invested elsewhere. And the only question at issue is, whether afterwards, and after the plaintiff became of age, this debt

was discharged by an accord and satisfaction. The plaintiff came of age in April, 1885, but continued to live at home with his father most of the time, until the death of the latter, which occurred on the sixth day of September, 1888. The proof shows that, after the plaintiff became of age, he was not only supported by his father, but that, in addition thereto, he was in the habit of frequently calling upon him for money, and that, in response to these repeated calls, he actually received several times the amount of the $500 which his father owed him; that finally the latter, becoming displeased with his son's conduct and his repeated importunities for money, upon being requested by the plaintiff to pay him said $500, said: "Edmund, I never want to hear of this matter again. I made the change of investment supposing it was for the best, but it was not. I have made it up to you many times over. If you are not satisfied, and want the $500, take it and go; but if you remain here, I do not want to hear of it again." The plaintiff made no reply, but continued to remain at home, and received support and money as before from his father, until the death of the latter. After the making of said arrangement, the father resigned said trusteeship and turned the bank-book over to the plaintiff, who subsequently withdrew on account the sum of $400 from the deposit, and, so far as appears, seems to have regarded the whole matter as settled, until after the death of his father, when he commenced this suit.

We think the proof sustains the defence of accord and satisfaction. The plaintiff had not only received from his father, after becoming of age, several times the amount which was owing to him in addition to his support, but upon being distinctly told that notwithstanding this fact he could have the $500 if he insisted thereon, but that in such case he was no longer to remain in his father's house, he elected to accept of this offer, and continue to be supported by him. In short, the plaintiff was given the option of taking the $500 due to him and leaving his father's house, or of continuing to remain as before, and in consideration thereof, to regard said indebtedness as paid and satisfied. He chose the latter course and received the benefit thereof. The satisfaction, therefore, which must be received as well as tendered in order to sustain the defence interposed, *Pettis* v. *Ray*, 12 R. I. 344, is fully

shown.   The thing stipulated to be done was not only actually done, by the defendants' testator, but was also accepted in satisfaction by the plaintiff.   *Clarke* v. *Hawkins*, 5 R. I. 219.

We are, therefore, of the opinion that the plaintiff is not entitled to recover in this action.

*Judgment for the defendants for their costs.*

As to the second case, the proof shows that June 2, 1874, the defendants' testator transferred three hundred shares of the capital stock of the Navassa Phosphate Company, a corporation duly incorporated under the laws of the State of New York, into his name as trustee for his three sons, Edmund G. Thurber, the plaintiff, William H. Thurber, and Dexter Thurber, one hundred shares for each; that the dividends which were declared on this stock from time to time were collected and kept by him, and that he never accounted for or paid over any part thereof to either of his said sons; that after his death the defendants, who are his executors, transferred the said stock to said sons respectively. The proof further shows that neither of said sons had any knowledge of the fact that their father held said stock in trust for them until after his decease.   Under this state of the proof the plaintiff claims that he is entitled to recover the amount of the dividends on the one hundred shares of said stock held by his father in trust for him, which were collected by the father in his lifetime, said dividends amounting in the aggregate to $4,050, together with interest thereon from the date of the receipt of said dividends respectively.   The defendants have set up several distinct defences in their pleas, but the only one relied on is a plea in set-off.   The account which is filed with this plea commences on April 15, 1883, and runs to the time of the testator's death.   It includes charges for special tuition in college, college expenses, bills paid for the plaintiff for clothing, medical attendance, boots and shoes, books and stationery, cigars, dentist's services, lawyer's services, cash advanced, expenses of a trip to Europe, expenses of a trip to California, board, washing, attendance, etc., amounting in the aggregate to $14,017.

This bill is not made up from any account which the father kept with his son, the plaintiff, for he kept none.   But it is made

up from a large number of bills found amongst his papers after his decease, many of which bills, as appears from an inspection thereof, were made out to the father directly, and some of which were made out to the plaintiff, but paid, as it is claimed, by the father; from letters from the plaintiff to his father requesting remittances, together with checks and drafts in response thereto; and for board, washing, etc., charged by the executors, the last-named item alone amounting to $4,725.

The proof offered by the defendants in support of this bill in set-off shows that after the plaintiff became of age he continued to remain at home most of the time and to be supported by his father; that before graduating from college he went abroad in company with one of the college professors, his father furnishing the money to pay his expenses; that after his graduation he made a trip to California in company with his mother, his father advancing the money therefor; and that while on this trip he made repeated calls upon his father by letters, telegrams, and drafts for money in addition to that furnished him at the start, which calls were complied with. Said letters, however, clearly show that the plaintiff well understood that the money which he was receiving from time to time was simply a gift from his father and not a loan.

The proof further shows that, both before and after the plaintiff came of age, he received a weekly or monthly allowance from his father in addition to the payment of his current expenses. In short, the proof as a whole plainly shows that the plaintiff, after coming of age, was still regarded by his father as a member of his family, and was supported and provided for substantially the same in all respects as he had been during his minority.

And the proof does not show or tend to show that there was any understanding or agreement, either express or implied, between the plaintiff and his father, to the effect that the former should repay the latter, either for the advances made or the support furnished by him. Indeed, all of the facts and circumstances show clearly enough that nothing of the kind ever entered into their minds, excepting only as to a single transaction involving the sum of $50, which sum the plaintiff requested his father to give himself credit for as the plaintiff's trustee.

During all the period covered by this bill, there was never

anything like an account or reckoning between the parties, nor were there any charges on the part of the deceased for board, clothing, money, or supplies which he had furnished, nothing in fact to show the least intention on his part of treating the plaintiff as his debtor. But, on the contrary, all of the proof tends to rebut even the implication of any agreement, promise, or engagement between the parties.

It is the ordinary case of a child continuing to remain at home, and sustain the same relation to his father in all respects after as before his arrival at the age of majority. And it is familiar law that under such circumstances no action can be maintained either by the father for the support of the son, or by the son for services rendered to his father. The position taken by the defendants, therefore, that, when the evidence offered rebuts the ordinary presumption between parent and child that advances of money are intended as gifts and not as loans, the relation of debtor and creditor is established, while doubtless correct, yet is inapplicable to the case at bar, for the reason, as already shown, that the proof wholly fails to rebut said presumption. We deem it unnecessary, therefore, to consider the numerous authorities cited by the defendants in support of said position.

We do not see that the proof offered by the defendants, to the effect that the plaintiff was extravagant in his habits, that he received more from his father than did either of the other children, and that his father was much dissatisfied and grieved concerning the plaintiff's conduct, changes the legal relation which existed between him and his father. Nor do we see that the fact that the total amount advanced to the plaintiff by his father during his lifetime, after the plaintiff became of age, was larger than the amount of the dividends sued for, and also that the plaintiff is a beneficiary to a much larger amount than said dividends, under his father's will, tends to show that the testator considered them as an offset to or payment for the dividends received by him. We do not think that the plaintiff's claim for interest on the dividends collected by the testator from the date of said collections respectively can be sustained, no demand therefor having been proved. Trustees are chargeable with interest in some cases in equity, whether earned or not; but this is an action at

law, and no interest can be recovered except upon demand proved. The plaintiff, therefore, is only entitled to interest from the date of his writ.

We allow the defendant's bill in set-off in the sum of $50 with interest from the 23d day of May, 1887, and give judgment for the plaintiff for the balance of his claim, with interest from the date of his writ.